Kenneth L. Hills and Shirley W. Hills, et al. [1] v. Commissioner. Hills v. Commissioner
Docket Nos. 4103-67, 4271-67, 4272-67.
United States Tax Court
T.C. Memo 1968-293; 1968 Tax Ct. Memo LEXIS 7; 27 T.C.M. (CCH) 1550; T.C.M. (RIA) 68293; December 24, 1968, Filed *7 Ralph R. Tate, Jr., for the petitioners. James Booher, for the respondent. SCOTT
Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1963 and 1964 in the following amounts: Docket No.
Petitioners
Calendar year
Deficiency.
4103-67
Kenneth L. Hills and Shirley W. Hills
1963
$239.69
1964
280.14
4271-67
Eva S. Barney
1963
93.81
1964
141.39
4272-67
Martin L. Turner and Sally L. Turner
1963
297.38
1964
237.41
The only issue for decision is what amount of income did Shirley W. Hills, Eva S. Barney, and Sally L. Turner each receive from tips as a waitress in each of the years 1963 and 1964. Findings of Fact Some of the facts have been stipulated and are found accordingly. Kenneth L. Hills and Shirley W. Hills, husband and wife, resided in Salt Lake City, Utah at the time their petition in this case was filed. They filed joint Federal income tax returns for each of the calendar years 1963 and 1964 with the district director of internal revenue, Salt Lake City, Utah. Eva S. Barney resided at the time her petition in this *8 case was filed in Salt Lake 1551 City, Utah. She filed a joint Federal income tax return with her husband Carl W. Barney, for each of the calendar years 1963 and 1964 with the district director of internal revenue, Salt Lake City, Utah. Martin L. Turner and Sally L. Turner, husband and wife, resided at the time their petition in this case was filed in Kearns, Utah. They filed joint Federal income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue, Salt Lake City, Utah. Shirley W. Hills (hereinafter referred to as Shirley), Eva S. Barney (hereinafter referred to as Eva), and Sally L. Turner (hereinafter referred to as Sally) were each employed as a waitress during the years 1963 and 1964 at Bratten's Sea Food Grotto (hereinafter referred to as Bratten's) 21st South, Salt Lake City, Utah. Bratten's operated restaurants at two locations, one of them being the 21st South Restaurant where Shirley, Eva, and Sally were employed and the other being a restaurant in downtown Salt Lake City located at 644 East Fourth South Street. The two restaurants were comparable in the type of food served and the type of clientele which patronized the *9 restaurants. The restaurants served complete luncheons and complete dinners during the years here in issue and throughout the following years up until the time of the trial of this case, as well as a large selection of items that might be ordered a la carte. During the years 1963 and 1964 there were between 35 and 40 separate entrees served at luncheons and at dinner ranging in price for the complete meal from $1.25 to $4.00 for a luncheon depending on the entree selected and from $2.10 to $4.80 for dinner depending on the entree selected. The luncheon included celery, tomatoes, olives, and a choice of salad, soup, fruit juice or hors d'oeuvres, the entree with potatoes, bread, a choice of drink, and a choice of dessert. The dinner included all the items included on the luncheon menu as well as cheese and instead of a choice of a cocktail, soup, or salad, included one of each item. Bratten's was the type of restaurant where people would come and bring their entire family. It was also patronized to an appreciable extent by teenagers, particularly on Friday and Saturday nights before and after school dances. Bratten's did not serve beer or wine or any other form of alcoholic beverages. *10 However, if a customer brought his own alcoholic beverage, the restaurant would provide glasses, ice, or any other setup which might be ordered by the customer. Bratten's did not encourage customers to linger and the management attempted to have the waitress who served a table have the patron served and leave the restaurant within 45 minutes although at times the actual turnover of tables took nearer to an hour. In addition to the regular dinner served at Bratten's, a children's dinner at half the price of a regular dinner was served to encourage family patronage of the restaurant. At Bratten's 21st South there was an upstairs room and a downstairs room. The waitresses' stations are rotated. Each waitress generally has 5 tables for dinner which will seat 4 persons each, but at some stations the tables are arranged so that several tables may be put together in a manner to seat up to 12 persons at a table. Generally, on Friday and Saturday nights there will be lines of people waiting to be seated for dinner during some parts of the evening. On the dinner shift commencing at approximately 5:30 p.m. on a Friday or Saturday a waitress would generally turn over her 5 tables 4 times before *11 the restaurant closed at 11:00 o'clock. On nights other than Friday and Saturday, the restaurant closed at 10:00 o'clock. Sometimes on Friday and Saturday nights teenagers would arrive at the restaurant shortly before closing time. Families with young children would generally patronize the restaurant from approximately 5:30 p.m. until 9:00 p.m. though occasionally families with children would be in the restaurant after 9:00 o'clock. On Sunday the patrons of the restaurant were to a large extent families. On Friday and Saturday nights the patrons consisted more of couples, either adult or teenaged. Sometimes teenagers would come in groups and at times groups of men and women would come to the restaurant together but would ask for separate checks. Although downtown Bratten's had been opened earlier, Bratten's 21st South did not open until 1961. Shirley came to work at Bratten's in 1962 and has been employed there since that time, working almost exclusively the dinner shift. Eva has worked at Bratten's 21st South since that restaurant opened the day after Christmas in 1961. She worked primarily at the dinner hour at Bratten's during the years here in issue. Prior to coming to Bratten's *12 21st South, Eva had worked at the downtown Bratten's where she generally worked at lunch time and would work in the evening at other places such as a dinner restaurant known as "Finn's," at the 1552 Aviation Club which is a private club, at the Country Club, and at the Hotel Utah Coffee Shop. Sally began working at Bratten's 21st South about 10 days after it opened and was employed there from that time up to the time of the trial of his case. She has worked almost entirely the dinner shift at Bratten's. During the year 1963 each waitress at Bratten's was paid $1 an hour and during the year 1964 each waitress was paid $1.05 an hour. In addition to this compensation each received additional compensation from tips and was given a meal allowance of 25 cents per day. During the years 1963 and 1964 the restaurant was not required to include waitresses' tips in computing social security taxes and therefore the restaurant kept no record of the waitresses' tips. It was customary at Bratten's for the waitresses to give the busboys 10 percent of the tips they received and at times if the busboys had been particularly helpful some waitresses would give them a larger portion than 10 percent *13 of their tips for the day. During the years 1963 and 1964 none of petitioners kept written records of the tips they received. Generally, when they got home they would put the tips which they had left after giving a portion of the amounts they received to the busboys in some special place such as a jar or box, and at a later time would take the money out and use it for their personal or family expenses. During the years 1963 and 1964 no one of petitioners made any notation of the amount of tips she had received when she took her tips from the place where she kept her money. In 1966 and 1967 Bratten's requested the waitresses to report the amount of tips they had received to the restaurant on a monthly basis in order that the amounts might be included as part of their wages for the purpose of computing social security taxes. In 1966, Shirley began to carry a little book in her purse and in the evenings after having given some amount of her tips to the busboy would, on most days, jot down the amount of tip money she had remaining. However, there were certain days listed in Shirley's book which showed no notation of tips without an explanation being given of why no tips were shown *14 for that day. Also, there were 2 months during the years 1966 and 1967 when Shirley failed to report the amount of tips for the month to the restaurant. Eva did not jot her tips down on a daily basis during 1966 and 1967 but continued to put the money in a box at home. However, in 1966 and 1967 she would count the money in the box once a month and jot down a notation of the amount she had in the box. She reported the amount to the restaurant for all but 2 months during these years. Eva would have given some portion of the tips she received to the busboys before she left the restaurant and it would be the remaining portion that she put into the box. During the years 1966 and 1967, at the conclusion of a day's work, Sally would give 10 percent or some slightly larger portion of the tips she had received to the busboy and when she got home would count the amount she had left and on most days make some notation of the amount in a book she kept. She reported an amount of tips received to the restaurant in 10 months in 1966 and 8 months in 1967. Eva was given a place as hostess at Bratten's at $300 per month but after keeping the position for a short time asked to return to her work *15 as a waitress. She did not generally receive tips as a hostess. During the years 1963 and 1964 at the private dinner clubs and country clubs in Salt Lake City, it was customary to add 10 percent of the cost of food to the patron's bill as a service charge. These dinner clubs were generally the type of place where a person would spend the greater portion of the evening having dinner. Many of the patrons at Bratten's would leave a tip of 25 cents or 50 cents irrespective of the amount of the overall charge for the food they purchased, and in some instances family groups or groups of teenagers would leave such amounts for a table where dinner had been served to several people. Some of the patrons at Bratten's left no tips at all. At dinner time approximately 25 percent of the persons served left no tip at all. More of the persons who left no tip at all were the persons who ordered a la carte than the persons who ordered the full dinner. During the years here in issue Bratten's had certain charge customers. Between 3 and 4 percent of the total sales of Bratten's 21st South during the years here in issue were charge sales. Some customers who charged their food would add a tip onto *16 the charge for the food. The amount would be given to the waitress by the restaurant manager from the cash register and a petty cash slip for the amount made out. Some charge 1553 customers left a tip on the table even though they charged their food. The downtown Bratten's during the years 1963 and 1964 had approximately 7 percent of its total sales as charge sales. Separate charge slips were retained at downtown Bratten's but not at the Bratten's 21st South where petitioners were employed. At the downtown Bratten's 28 percent of the total charge sales had the tip also charged and the balance of the charge sales had no tip included on the charge. On the tickets at downtown Bratten's where an amount of tip was charged along with the food charge, the average amount of tip was 12 1/2 percent of the total cost of the food. A spot check of the few available slips at Bratten's 21st South showed the average amount of the tip to be approximately 12 1/2 percent of the food charges. During the years 1963 and 1964 Shirley received $32.27 and $32.10, respectively, as tips from charge sales. Eva received for these years $19.37 and $32.80, respectively, and Sally received $32.54 and $23.35, *17 respectively. Charge sales were to a large extent by businessmen and more businessmen generally patronized Bratten's downtown than Bratten's 21st South. Generally, tips charged by a customer were a higher percentage of the total sales check then tips left in cash on the table whether on a charge or cash basis. During the year 1963 Shirley, Eva, and Sally received salary in the amounts of $1,155.75, $1,368.69, and $1,464.00, respectively, and in 1964 they received salary in the amounts of $1,266.00, $916.50, and $1,470.25, respectively. They made total sales during these years in the following amounts: Shirley
Eva
Sally
1963 $18,447.00
1963 $11,180.00
1963 $25,101.00
1964 20,455.00
1964 14,902.00
1964 24,571.00
During the years 1966 and 1967, Shirley, Eva, and Sally made sales in the following amounts: Shirley
Eva
Sally
1966 $20,585.00
1966$22,162.45
1966 $22,529.00
1967 26,499.00
1967 30,868.00
1967 25,541.00
During these years the amounts shown in the books kept by these petitioners as tips received for the purpose of reporting, on a monthly basis, tips to the restaurant were in the following amounts: Shirley
Eva
Sally
1966 $703.15
1966 $746.00
1966 $715.39
1967 854.06
1967 777.00
1967 911.46
*18 For the years 1963 and 1964 Shirley on her Federal income tax return reported income from tips in the respective amounts of $302.50 and $260.00. During these years Eva on her Federal income tax returns reported income from tips in the respective amounts of $234.00 and $329.00, and Sally reported income from tips during these years in the respective amounts of $400.00 and $461.18. Respondent determined that the total tips received by Shirley, Eva, and Sally in the years here in issue were $1,476.00, $894.00, and $2,008.00, respectively, in 1963 and $1,636.00, $1,192.00, and $1,966.02, respectively, in 1964. In making these determinations respondent computed the tip income of each of these petitioners at 8 percent of her total sales, which amount he arrived at by first determining that the average tip received by each of petitioners from customers who left a tip was 11 percent of the sales check, making an adjustment of 20 percent to allow for persons who did not tip, and reducing the resultant figure by 10 percent thereof for amounts paid to busboys. The result of this computation was a net amount of tips in excess of 7.9 percent of sales which respondent rounded off to 8 percent *19 to compute the total tip income received by each petitioner. As a result of his adjustment respondent increased the income as reported by Kenneth L. and Shirley W. Hills by $1,173.50 of additional tips received by Shirley in 1963 and by $1,376 of additional tips received by Shirley in 1964. He increased the income as reported by Carl W. and Eva S. Barney by $660 of additional tip income received by Eva in 1963 and $863 of additional tip income received by Eva in 1964. He increased the income as reported by Martin L. and Sally L. Turner by $1,608 of additional tip income received by Sally in 1963 and by $1,504.82 of additional tip income received by Sally in 1964. Ultimate Finding of Fact The total income from tips was understated by petitioners on their respective income tax returns for the years 1963 and 1964 in the amounts shown in the following table: 1554 Tip
Tip
Under-
income
income
statement
received
reported
of income
1963
Shirley
$1,061.00
$302,50
$ 758.50
Eva
643.00
234.00
409.00
Sally
1,443.00
400.00
1,043.00
1964
Shirley
$1,176.00
$260.00
$ 916.00
Eva
857.00
329.00
528.00
Sally
1,413.00
461.18
951.82
*20 Opinion This case is purely factual. The evidence shows that none of petitioners kept any written records of the tip income received during the years here in issue. Although they claim some recollection of the amount on the basis of having kept it separate for a while and counted it, they do not in fact contend that they can remember the amount received with any degree of accuracy. The primary contention of petitioners is that they kept an accurate record of their tips in 1966 and 1967, that the tips they received in these years averaged for Shirley 3.32 percent of sales, for Eva 2.95 percent of sales and for Sally 3.18 percent of sales, which averages they contend would be approximately the same percentages of tips to sales they would have received in 1963 and 1964. They argue that their tip income for the years 1963 and 1964 should be computed at these percentages of sales. The records kept by petitioners in 1966 and 1967 were notations jotted down hurriedly. The books in which the notations were made were placed in evidence. From observation of the records and the witness's testimony with respect to these records, we conclude that these records do not furnish a reliable basis *21 for determining the amount of tips received by petitioners as a percentage of sales in the years here in issue. Not only do the records kept by petitioner for 1966 and 1967 lack reliability, other evidence in this record indicates that the percentages of tips to sales which petitioners would have us accept as applicable to the years 1963 and 1964 based on these records results in a computation of amounts of tips less than the amounts received for those years. The tips received by petitioners on charge sales were approximately 12 1/2 percent of the total food charge. At private clubs and similar types of places in the Salt Lake City area where a service charge was added, the service charge was 10 percent of the charge for the food which would indicate that 10 percent would be the approximate amount that people accustomed to going to such type of place would be inclined to tip in the Salt Lake City area. The evidence, however, indicates, not only from the testimony of petitioners but from testimony of other witnesses, that the amount of tips which the patrons of Bratten's 21st South would leave would be on the average less than the 10 percent service charge which would be added to the *22 bills of patrons of private clubs. Much of the clientele of Bratten's was family groups and teenagers who generally would leave a lesser tip than the type of person who patronized a dinner club. We approve the method used by respondent to determine the amount of tips received by each of petitioners in each of the years here in issue but have used a lesser percentage of tips to sales than was used by respondent. Where a taxpayer fails to keep adequate records, respondent is justified in computing his tip income on the basis of a reasonable formula. ; ; and . However, where the evidence shows that certain adjustments should be made in the amount as determined by respondent from the formula or in percentages or other figures used in the formula, it is incumbent upon the Court to make such adjustment. and From the evidence we have concluded that the average tip left at Bratten's during the years 1963 and 1964 by persons who left a tip would be more nearly *23 8 percent of the food charge than the 11 percent used by respondent. Although the evidence establishes that approximately 25 percent of the customers did not tip, we agree with respondent that this would amount to approximately 20 percent of sales. More often the customers who ordered a la carte failed to tip than the customers who ordered the regular dinner. The evidence indicates that the amount of the food checks of a la carte customers, would, on the average, be less than the food checks of the dinner customers. Although there is some testimony that on occasion some waitresses might give the busboys more than 10 percent of their tips, we have concluded that this was rare enough that an adjustment of 10 percent of the tips received by each of 1555 petitioners for the amounts given to busboys is adequate. Using 8 percent of each petitioner's total food sales as a starting point instead of the 11 percent used by respondent, we have concluded, following otherwise his formula, that each petitioner in each of the years here in issue received tips of 5 3/4 percent of sales and on that basis have determined the amount of tip income received by each petitioner. We recognize, as we *24 have in numerous cases that the amount of income received from tips cannot be computed with mathematical exactitude when records were not properly kept by the recipient of the tip. However, on the basis of all the evidence in this case, our best judgment of the amount of tips received by each petitioner in each of the years here in issue is as we have set forth in our ultimate finding of fact. Decision will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Eva S. Barney, Docket No. 4271-67, and Martin L. Turner and Sally L. Turner, Docket No. 4272-67.↩